591 So.2d 837 (1991)
Randy THOMAS
v.
STATE of Mississippi.
No. 89-KA-0837.
Supreme Court of Mississippi.
December 18, 1991.
Jacqueline Smith Pierce, Jackson, for appellant.
Mike C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
*838 HAWKINS, Presiding Justice, for the Court:
The circuit court of Hinds County, First Judicial District, convicted Randy Thomas of possession of cocaine with intent to distribute, Miss. Code Ann. § 41-29-139(a)(1) (Supp. 1989), and conspiracy to distribute cocaine, Miss. Code Ann. § 97-1-1 (Supp. 1989), after trial by jury. He was sentenced to ten years in the custody of the Mississippi Department of Corrections with five years suspended and five years to serve for the possession with intent to distribute conviction and ten years in the custody of the Mississippi Department of Corrections with five years suspended and five years to serve for the conspiracy to distribute cocaine conviction.
We reverse as to the conviction of possession of cocaine with intent to distribute and conspiracy to distribute cocaine, but affirm the lesser included offense of possession of cocaine. This case is remanded for proper sentencing consistent with this opinion.

FACTS
On Friday, June 10, 1988, William Gladney, detective for the Jackson Police Department, presented an affidavit for a search warrant to be issued directing a search of an apartment occupied by Reggie Mickel and Jacqueline Williams on McTyre Street in Jackson. From the underlying facts and circumstances, Gladney had good reason to believe that cocaine was concealed in the apartment based on information from a confidential informant. The judge issued the warrant.
At approximately 6:30 p.m. Gladney and four detectives, Pitts, Lee, Atwood, and Barnes, met to coordinate their approach to the apartment. Since the occupants were alleged drug dealers, it was necessary to take precautions to prevent harm to anyone. The detectives began their move with Gladney leading the way. Gladney was closest to the door of the apartment waiting for the others to get into position.
As he waited, he heard a female voice inside the apartment say, "Pass me the pipe," and a male voice say, "We've got to get this stuff sold  I need the money." He heard a second male voice respond, "There's plenty more where that came from." He did not identify who made any of the statements. Randy Thomas, who was in the apartment, walked to the window, opened the curtain and looked out. According to Gladney, he yelled: "G----d----, there's Gladney!" Thomas admitted that he said, "Police." Gladney then heard scrambling inside the apartment.
Gladney yelled, "Police, we've got a search warrant," and kicked in the door to the apartment and went inside. Three of the detectives rushed in after Gladney. Pitts, the other detective, was outside watching the front. Three black males and a black female were in the apartment, one being Thomas. The four individuals found in the apartment were placed in the living room under guard while the apartment was searched.
Gladney first noticed two guns, a .38 revolver and .38 Derringer, on the table in the living room. He recovered a "crack smoking pipe" from the dining room floor which was still warm. Crack cocaine and powder cocaine were spilled on the floor in the dining room and in the kitchen. Gladney also noticed boiling water, baking soda, a razor blade and plastic baggies with the tip of the bag cut out of them in the kitchen, all of which evidenced cocaine being produced into crack, a purer and more potent form of cocaine. Gladney recovered $2,310 from beneath the mattress in the bedroom. After the individuals were placed under arrest and read their Miranda rights, Gladney conducted a body search on each of them. He found a packet of cocaine and $25.00 in Thomas' pants pocket. Edwina Ard, an expert in chemical analysis with the Jackson Police Department, testified that Thomas possessed between six and seven grams, or a little less than a third of an ounce.
Thomas was indicted by a Hinds County grand jury for possession of cocaine with intent to distribute and for conspiracy to distribute cocaine with Reginald Mickel, Ella Simmons and Jacqueline Williams. Thomas was convicted of both charges and *839 filed a motion for new trial and a judgment notwithstanding the verdict, which the judge denied. Thomas has now appealed his convictions.

LAW

I.

COUNT I: POSSESSION WITH INTENT TO DISTRIBUTE
Upon appeal Thomas admits he possessed cocaine, but argues that the evidence to support his conviction for possession of cocaine with intent to distribute was insufficient. We agree.
As to the intent to distribute conviction, here again, we have a clear case of possession, but only surmise as to an intent to distribute. Stringfield v. State, 588 So.2d 438 (Miss. 1991). The evidence only points to a mere suspicion of intent, which is insufficient to support this conviction. Thomas admittedly possessed a small quantity of cocaine in Mickel's and Williams' apartment, where additional cocaine was seized along with contraband identified with distribution of cocaine and crack, but this only implies possession of cocaine for personal use. See Stringer v. State, 557 So.2d 796, 797-98 (Miss. 1990); Boches v. State, 506 So.2d 254, 260 (Miss. 1987); Bryant v. State, 427 So.2d 131, 132 (Miss. 1983); Hollingsworth v. State, 392 So.2d 515, 518 (Miss. 1981); Applegate v. State, 301 So.2d 853 (Miss. 1974).
We accordingly affirm on the lesser included offense of possession of cocaine, and remand for resentencing under Miss. Code Ann. § 41-29-139(c)(1).

II.

COUNT II: CONSPIRACY WITH INTENT TO DISTRIBUTE
Thomas also challenges the sufficiency of the evidence in the conviction of conspiracy with the intent to distribute cocaine.
The crime of conspiracy is complete when two or more persons combine and agree to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, which does not have to be an overt act in pursuance thereof. Miss. Code Ann. § 97-1-1 (Supp. 1990); Clayton v. State, 582 So.2d 1019 (Miss. 1991); Taylor v. State, 536 So.2d 1326, 1328 (Miss. 1988). The agreement need not be formal or express, but may be inferred from the circumstances, particularly from declarations, acts and conduct of the alleged conspirators. Clayton 582 So.2d at 1022; Nixon v. State, 533 So.2d 1078, 1092 (Miss. 1987).
The only evidence of an agreement by the occupants of the apartment to distribute cocaine were the statements Gladney heard just before he entered the apartment: the unidentified female voice saying, "Pass me the pipe"; the unidentified male voice saying, "We've got to get this stuff sold  I need the money"; and finally the unidentified male response, "There's plenty more where that came from." Cocaine and other contraband  such as the crack pipe, guns, plastic baggies and $2,310 cash  were found in the apartment. Clayton 582 So.2d at 1022; McCray v. State, 486 So.2d 1247, 1251-52 (Miss. 1986); McDonald v. State, 454 So.2d 488, 491-95 (Miss. 1984).
All of this does little to prove Thomas himself was engaged in a conspiracy to distribute cocaine. And, his cry of alarm at seeing Gladney would have been voiced whether he was on the premises as a guest or a joint venturer. The small packet of cocaine found on his person clearly proved possession; that much, but no more. From this evidence, only surmise exists of a criminal conspiracy.
We accordingly reverse and render Thomas' conviction of conspiracy with intent to distribute cocaine.
COUNT I: AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COUNT II: REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.
PITTMAN, J., dissents without written opinion.